1
2
3
4
5
6
7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10   POM WONDERFUL LLC,              )    CV 05-4647 FMC (SSx)

11                                   )
                    Plaintiff,       )
12                                   )    **ORDER DENYING**
     vs.                             )    **PLAINTIFFS' MOTION FOR**
13                                   )    **PRELIMINARY INJUNCTION**
                                     )
14   GENI, INC. - GOOD EARTH         )
     NUTRITIONAL INGREDIENTS,        )
15   INC.,                           )
                                     )
16                                   )
                    Defendants.      )
17   _____)

18

19       This matter is before the Court on Plaintiff POM Wonderful LLC's

20   Motion for Preliminary Injunction (docket no. 21), filed December 19, 2005.

21   The Court has heard oral argument and read and considered the moving,

22   opposition, and reply documents submitted in connection with this motion.

23   For the reasons and in the manner set forth below, the Court hereby

24   DENIES Plaintiff's Motion for Preliminary Injunction.

25              **I. EVIDENTIARY OBJECTIONS**

26       The Court acknowledges and has reviewed Plaintiff's evidentiary

27   objections to various statements in the Amin and Cropper Declarations and

28   Defendants' Memorandum of Points and Authorities in Opposition.

1   However, here, the Court considers some evidence that might otherwise be

2   inadmissible (e.g., for lack of foundation) because, in conjunction with a

3   motion for preliminary injunction, the Court exercises its discretion to

4   consider evidence that might otherwise be inadmissible at trial. *Glow*

5   *Industries, Inc. v. Lopez*, 252 F.Supp.2d 962, 966 (C.D. Cal. 2002) (citing, *inter*

6   *alia*, *Sierra Club v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir.1993), for the

7   proposition that "at the preliminary injunction stage, the procedures in the

8   district court are less formal, and the district court may rely on otherwise

9   inadmissible evidence, including hearsay evidence") and *Republic of the*

10  *Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir.1988): "It was within the

11  discretion of the district court to accept this hearsay for purposes of deciding

12  whether to issue the preliminary injunction").

## II. SUMMARY OF FACTUAL BACKGROUND

14          This case arises from a dispute over the rights to the mark "POM" and

15  a family of related marks.  Plaintiff POM Wonderful ("POM Wonderful"), a

16  Delaware limited liability company, produces and markets pomegranate

17  juice and pomegranate juice-blend beverages.  Defendant Geni Inc. - Good

18  Earth Nutritional Ingredients, Inc. ("Geni"), an Indiana corporation, creates,

19  markets, and sells a variety of cosmetic and nutritional products, including

20  POMElla, a pomegranate raw ingredient extract sold to third-party

21  manufacturers as a dietary supplement for use in final products.

22          The record reflects that Plaintiff staked an early and aggressive

23  position in the pomegranate market, selling fresh fruit in 2001, and

24  expanding into the production and distribution of pomegranate juice in

25  2002, (Tupper Decl., ¶ 3), and Plaintiff has contributed significant resources

26  to develop its market presence and brand recognition (Tupper Decl., ¶¶ 2-7).

27

28                                          2

Plaintiff secured trademark registration for POM (Registration No. 2637053) and POM Wonderful (Registration No. 2648035) standard character[1] or "word" marks. Plaintiff's POM word mark was registered as of October 15, 2002 (with a "first use" date of April 11, 2002) for use in international class 32 for fruit juices.[2] (Tupper Decl., Ex. 12.) Plaintiff was granted registrations for its "POM Wonderful" design mark, which substitutes a heart for the "O" in "POM" for use in classes 31 (fresh fruits) and 32 (fruit juices) with a first use date of October 15, 2001. (Tupper Decl., Exs. 14 & 15.)

When Plaintiff filed the instant motion, it also had a pending trademark application for the "POM and heart" design mark ("POM heart-design mark"), which substitutes a heart shape for the "O" in the word "POM," (U.S. Application Serial Number 76553991) in classes 31 (fresh fruits) and 32 (fruit juice concentrates), with respective "first use" dates of October 15, 2001 and September 16, 2002.[3] (Tupper Decl., Ex. 24.)

In April 2004, Geni filed for trademark registration with the United

---

[1] A standard character mark "consists of standard characters, without claim to any particular font, style, size, or color." (Tupper Decl., Ex. 27.) The Court refers to "word mark(s)" and "standard character mark(s)" interchangeably.

[2] Plaintiff's "Pom Wonderful" word mark was granted for use in class 31 for fresh fruits. (Tupper Decl., Ex. 13.)

[3] The Court takes judicial notice of the fact that, as of January 26, 2006, the USPTO's online Trademark Application and Registration Retrieval system ("TARR system"), available at: http://tarr.uspto.gov/, reflected the status of the application for Plaintiff's POM heart-design mark as "registered" on January 24, 2006 (Registration No. 3047447). Fed. R. Evid. 201(b) (permitting judicial notice of facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

States Patent and Trademark Office ("USPTO") for the "Pomella" word mark. (Amin Decl. in Support of Def's Opp'n to Pl's Mot for Prelim. Inj., Ex. 4.) The USPTO registered the mark as of April 19, 2005 (Reg. No. 2942045), for use in class 5 (for dietary supplements) and reflecting a "first use" date of March 30, 2004, for the word mark in connection with dietary supplements. (Tupper Decl., Ex. 26.) Geni maintains that it received no objections during the registration process, from the USPTO or any third-parties regarding any likelihood of confusion with any other registered or pending marks. (Cropper Decl., ¶ 8.)

On February 2, 2005, Defendant applied to the USPTO for registration of the "Pomella" word mark in both class 3 for cosmetics and class 32 for fruit drinks, juices, and other non-alcoholic drinks (U.S. Application Serial No. 78558757). (Tupper Decl., Ex. 27.)[4] That application has not yet been approved, and an opposition to the application is pending at the Trademark Trial and Appeal Board.[5] On the same date, Defendant submitted an "intent to use" application for the "Pomella" word mark in class 5 for dietary supplements (U.S. Application Serial No. 78558722); the opposition period for this application is complete and a Notice of Allowance has been issued.[6]

Defendant's use of the Pomella word mark in commerce has been a stylized version of the word "Pomella," with the first three letters in block print font and the "ella" portion of the word (a shortened form of "ellagic

---

[4]On the same date, Defendant applied for registration of the "Pomlite" word mark in class 5 for dietary supplements. (Tupper Decl, Ex. 28.)

[5]The Court takes judicial notice of the fact that the USPTO's only TARR system indicates that this is the current status of said application.

[6]The Court takes judicial notice of the fact that the USPTO's only TARR system indicates that this is the current status of said application.

acids" and "ellagitannin complexes," which are present in pomegranates) printed in a cursive font. Additionally, a small symbol (which Plaintiff characterizes as a heart and Defendant characterizes as graphic that is representative or suggestive of the appearance of a cross section of a pomegranate) appears in the lower loop of the "E" of "POM*Ella*." (Tupper Decl., Ex. 30.) The record demonstrates and Defendant does not dispute that Defendant uses the mark, both in normal font and in the stylized version, on its website and other marketing materials.

On June 27, 2005, Plaintiff filed suit in federal court, asserting claims including trademark infringement, trademark dilution, unfair competition, and trademark cancellation.

On December 19, 2005, Plaintiff filed the instant Motion for Preliminary Injunction, seeking to bar Defendant from the allegedly unlawful use of the following marks in connection with Defendant's products or the marketing of those products: the POM word mark (U.S. Registration No. 2637053), the POM heart-design mark Registration No. 3047447), and the related family of POM marks (including Registration No. 2640835 for POM Wonderful word mark; Registration Nos. 2780314 and 2864641 for POM Wonderful heart-design mark; as well as registrations for related POM Passion (class 32, fruit smoothies), POM Power (class 32, fruit smoothies), POM Beach (class 32, fruit juice), POMARITA (classes 32 and 33, drink mixer and alcoholic cocktail), and POMTINI (classes 32 and 33) word marks). Although Plaintiff's Motion appears to cast a wide net by referencing infringement of the entire "family of POM marks," Plaintiff's arguments in support of its Motion are concerned with use of "the term POM" or any term similar to it in connection with any pomegranate-based

1    product.[7] (*See e.g.*, Proposed Order Granting Pl's Mot. for Prelim. Inj. ¶¶

2    4(b), (e), (h).) Additionally, Plaintiff contends that Defendant permitted,

3    or is permitting, one or more customers to use the POMElla mark on

4    pomegranate juice products the customers make and market directly to

5    consumers (*e.g.*, Memo. of P. & A. in Support of Pl's Mot. for Prelim. Inj.

6    2:7-11). However, the evidence in the record makes clear that Defendant's

7    customer did not use the POMElla mark as the name of the juice product;

8    rather, the name of the customer's product is "Naturally Pomegranate™,"

9    and the product label indicates the juice is "Made with POMElla, promoting

10    cardiovascular health." (Tupper Decl., Ex. 25.)

11       Plaintiff also asserts that, in the weeks just prior to Plaintiff's filing of

12    the instant motion, Defendant had announced its intended expansion of the

13    use of its POMElla mark to include its use in connection with a tea-type

14    pomegranate drink and a pomegranate juice product. (Pl's Memo. of P. & A.

15    in Support of Prelim. Inj. 2:12-15.) However, the evidence Plaintiff submits

16    on this topic only evinces Defendant's announcement of a new "tea-grade"

17    pomegranate-based dietary supplement (a "pomegranate tea ingredient")

18    called "PomElla TG," being marketed as an ingredient to be used in other

19    manufacturers' products. (Tupper Decl., Exs. 32 & 33.) Plaintiff does not

20    make clear whether it anticipates that the future use of the POMElla mark in

21    connection with this new dietary supplement will be by Defendant or by one

22    of the third parties to which Defendant sells its dietary supplement product.

23

24    _____

25    [7]At Oral Argument on January 30, 2006, Plaintiff asserted for the first time that it was only seeking to enjoin Defendant's use of the POM heart-design mark. This is not consistent with the position Plaintiff took in its Motion or Reply documents or the relief Plaintiff requested in the Proposed Order it submitted in connection with the instant Motion. (*See e.g.*, Proposed Order Granting Pl's Mot. for Prelim. Inj. ¶¶ 4(b), (e), (h).)

26

27

28                       6

1    Defendant opposes the instant Motion, arguing that a preliminary

2    injunction is not properly granted because Plaintiff does not have a

3    sufficiently strong protectable interest in the POM mark(s) and cannot

4    establish a sufficiently strong showing of a likelihood of consumer

5    confusion.

6    **III. LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

7    The Ninth Circuit has stated the legal standard justifying the issuance

8    of a preliminary injunction in a number of ways. *See, e.g., Brookfield*

9    *Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046

10    (9th Cir. 1999) ("A plaintiff is entitled to a preliminary injunction in a

11    trademark case when he demonstrates either (1) a combination of probable

12    success on the merits and the possibility of irreparable injury or (2) the

13    existence of serious questions going to the merits and that the balance of

14    hardships tips sharply in his favor." [citation omitted]); *Topanga Press, Inc. v.*

15    *City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993) (applying a two-part

16    test that considers: (1) whether a probability of success on the merits and the

17    possibility of irreparable harm have been raised; or (2) whether serious

18    questions have been raised and the balance of hardships tips sharply in the

19    moving parties' favor), *cert. denied* U.S. 1030, 114 S. Ct. 1537 (1994); *United*

20    *States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir. 1987)

21    (setting forth a four-part test that considers (1) likelihood of success on the

22    merits; (2) the possibility of irreparable injury in the absence of an

23    injunction; (3) a balancing of the harms; and (4) the public interest); *Regents*

24    *of Univ. of California v. American Broadcasting Co.*, 747 F.2d 511, 515 (9th Cir.

25    1984) (applying a three-part test that combines the second and third parts of

26    the four-part test into one part); *see also Oakland Tribune, Inc. v. Chronicle*

27

28                                    7

1  *Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985) (suggesting that a high

2  showing of likelihood of success on the merits lessens the degree of

3  irreparable harm required to be shown by the moving party, and vice versa).

4  These tests, although phrased differently, all require the Court to inquire

5  into whether there exists a likelihood of success on the merits, and the

6  possibility of irreparable injury; the Court is also required to balance the

7  hardships.

## IV. DISCUSSION

9  A preliminary injunction is properly granted where the moving party

10  can establish a likelihood of success in proving: (1) ownership of a

11  protectable or protected mark, and (2) subsequent use that is likely to create

12  consumer confusion with respect to products similar enough to be

13  competitive in a particular market. *Comedy III Prod., Inc. v. New Line

14  Cinema*, 200 F.3d 593, 594 (9th Cir. 2000). As the Ninth Circuit has

15  explained, "[t]he core element of trademark infringement is whether the

16  similarity of the marks is likely to confuse customers about the source of the

17  products." *Interstellar Starship Services, Ltd. v. Tchou*, 204 F.3d 936, 941 (9[th]

18  Cir. 2002)

19  A trademark is a limited property right in a particular word, phrase, or

20  symbol, 15 U.S.C. § 1051, that "is used to identify a manufacturer or sponsor

21  of a good or the provider of a service." *Mattel, Inc. v. MCA Records, Inc.*, 296

22  F.3d 894, 900 (9th Cir. 2002) (citing *New Kids on the Block v. News Am. Publ'g,

23  Inc.*, 971 F.2d 302, 305 (9th Cir.1992)). The Ninth Circuit has characterized

24  the purpose of the protections afforded by the Lanham Trade-Mark Act, 15

25  U.S.C. § 1051 *et. seq.*, as limited to "avoid[ing] confusion in the marketplace"

26  by allowing a trademark owner to "prevent[ ] others from duping consumers

27

28

1  into buying a product they mistakenly believe is sponsored by the trademark

2  owner." *Mattel, Inc. v. Walking Mountain Productions*,  353 F.3d 792, 806 (9th

3  Cir. 2003) (quoting *MCA*, 296 F.3d at 900) (internal quotations omitted).

4  **A.  Likelihood of Success on the Merits**

5  Although Plaintiff's papers repeatedly reference the POM "family of

6  marks," Plaintiff's arguments regarding the merits rest on the contention

7  that Defendants' use of the "POM mark" or "the term POM" is confusingly

8  similar to Plaintiff's use of the POM word mark and POM heart-design

9  mark.

10  *1.  Validity of the POM Mark and Family of Marks:*

11  Here, Plaintiff's argument begins from the proposition that its POM

12  word mark and POM heart-design marks are registered and presumptively

13  valid.  Defendant argues that the term "POM" is not a protectable mark

14  because it is merely "generic" or "descriptive."  Even if the word mark

15  qualifies as "suggestive," it is not entitled to the level of protection Plaintiff

16  seeks here because the term "POM" is in relatively wide use in the market

17  and Plaintiff has not shown that the mark has acquired a secondary meaning

18  in the marketplace.

19  **a.  Registration and Claims under the Lanham Act:**

20  Federal trademark infringement claims under Section 32 of the

21  Lanham Act apply to registered marks.  Here, Plaintiff alleges infringement

22  of the POM word mark and POM heart-design mark.  Both are registered

23  marks for use in international class 32 for non-alcoholic fruit juice products.

24  Plaintiff does not directly raise or argue its unfair competition claim

25  pursuant to Section 43(a) of the Lanham Act as a basis for the grant of a

26  preliminary injunction; however, a Section 43(a) argument applies to both

27

28                                    9

1    registered and unregistered marks and affords protection against a somewhat

2    wider range of practices. *Brookfield Comm., Inc. v. West Coast Enter. Corp.,*

3    174 F.3d 1036, 1046 n. 6, 1047 n. 8 (9th Cir. 1999); *Kendall-Jackson Winery,*

4    *Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 n. 7 (9th Cir. 1998)

5    ("Registration is not a prerequisite for protection under § 43(a) . . . but courts

6    look to the general principles qualifying a mark for registration under § 2

7    when determining whether an unregistered mark is protectable under §

8    43(a). . .").

9          Under either theory, Plaintiff must establish that its "POM" mark is

10    valid. *Comedy III,* 200 F.3d at 594.

11                    **b. The POM Heart-Design Mark:**

12          A protected mark must be sufficiently distinctive to distinguish the

13    moving party's goods from other goods in the marketplace. *Kendall-Jackson,*

14    150 F.3d 1042, 1047 (9th Cir. 1998). Registration of a mark on the USPTO's

15    Principal Register "constitutes prima facie evidence of the validity of the

16    registered mark and of [the owner's] exclusive right to use the mark on the

17    goods and services specified in the registration." *Brookfield Comm.,* 174 F.3d

18    at 1047.

19          Plaintiff asserts, Defendant does not contest, and the Court agrees that

20    Plaintiff's POM heart-design mark is protectable as a distinctive mark. As a

21    federally registered trademark, it is entitled to protection against the use of

22    similar marks if confusion might result. Moreover, the Court notes that the

23    UPTO's registration of the POM heart-design mark for use in classes 31 and

24    32 is further evidence that this mark is entitled to protection. Therefore, the

25    key issues with respect to the heart-design mark are addressed, infra, in

26    connection with the "likelihood of confusion" prong of the trademark

27

28                                10

1  infringement test.

2          c. **The POM Word Mark:**

3          Plaintiff's arguments in support of enjoining any use of "the term

4  POM" necessitate a more detailed analysis of the POM word mark.

5          Judge Friendly articulated the classic test regarding the distinctiveness

6  of marks, viewing marks as falling somewhere along a "distinctiveness scale."

7  *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)

8  (listing the categories in the following order to roughly reflect eligibility for

9  trademark status and degree of protection accorded: (1) generic, (2)

10  descriptive, (3) suggestive, and (4) arbitrary or fanciful).[8] Judge Friendly

11  explained that the lines between these categories can blur and "the

12  difficulties are compounded because a term that is in one category for a

13  particular product may be in quite a different one for another." *Id.*

14          Generic marks refer to the "genus of which the particular product is a

15  species" and are not entitled to trademark protection. *Id.* 9-10. Descriptive

16  marks "forthwith convey[] an immediate idea of the ingredients, qualities or

17  characteristics of the goods." *Id.* at 11 (internal quotations and citation

18  omitted). However, descriptive marks are only afforded protection upon

19  proof that they have acquired sufficient distinctiveness in commerce. *Id.* at

20  10 (explaining that Section 2(f) of the Lanham Act permits registration of a

21  mark "which has become distinctive of the applicant's goods in commerce");

22

23          [8]Although not at issue in connection with the POM word mark, fanciful trademarks

24  are words created solely for their use as marks, and arbitrary trademarks are common words
    used in uncommon or unexpected ways. *Abercrombie & Fitch*, 537 F.2d at 11, 11 n. 12 (also

25  explaining that "fanciful or arbitrary terms enjoy all the rights accorded to suggestive terms
    as marks without the need of debating whether the term is 'merely descriptive' and with

26  ease of establishing infringement"). The strong protection to which Plaintiff's POM heart-
    design mark is entitled reflects this.

27

28                                          11

1    *Kendall-Jackson*, 150 F.3d at 1047 ("Descriptive marks are not inherently

2    distinctive and hence do not initially satisfy the distinctiveness element. But

3    descriptive marks can acquire distinctiveness if the public comes to associate

4    the mark with a specific source. Such acquired distinctiveness, which is

5    referred to as "secondary meaning," allows § 43 to protect descriptive marks

6    that otherwise could not qualify for protection as trademarks [citation

7    omitted]").

8           A mark is suggestive "if it requires imagination, thought and

9    perception to reach a conclusion as to the nature of goods," and such marks

10   are entitled to protection without a showing of secondary meaning.

11   *Abercrombie & Fitch*, 537 F.2d at 11; *AMF, Inc. v Sleekcraft Boats*, 599 F.2d

12   341, 349 (9th Cir. 1979) (characterizing suggestive marks as subtly connoting

13   something about the product).  The Ninth Circuit has explained that

14   fanciful, arbitrary, and suggestive marks are generally afforded protection

15   because of their inherent distinctiveness. *Interstellar Starship*, 204 F.3d at 943

16   n. 6.  However, suggestive marks are presumptively weak and are entitled to

17   protection only where the circumstances favor protection, such as when the

18   holder has expended substantial resources to promote the mark. *Brookfield*

19   *Comm.*, 174 F.3d at 1058 (". . . placement within the conceptual

20   distinctiveness spectrum is not the only determinant of a mark's strength, as

21   advertising expenditures can transform a suggestive mark into a strong

22   mark, [citation omitted], where, for example, that mark has achieved actual

23   marketplace recognition.").

24          Here, the record clearly indicates that Plaintiff's "POM" word mark is

25   suggestive because it requires customers to make a logical connection

26   between what is effectively an "abbreviation" for the word "pomegranate"

27

28                                    12

1   and, in turn, to associate pomegranates with Plaintiff's line of juice products,

2   packaged with and advertised under the "POM Wonderful" brand name. *See*

3   *Kendall-Jackson*, 150 F.3d 1047 (finding wine producer's use of grape leaves

4   on wine bottles "suggestive" because of the logical connections required

5   between grapes and wine, wine and the producer's products).

6          Because suggestive marks are presumptively weak, a determination of

7   the level of protection to be afforded Plaintiff's "POM" word mark turns on

8   its use in context.  Here, Plaintiff has shown the expenditure of considerable

9   resources in connection with the development and marketing of its juice

10  product line.  Additionally, Plaintiff has established that its POM-heart

11  design mark and, to an even greater extent, its POM Wonderful design mark

12  are used extensively in the considerable marketing efforts on which Plaintiff

13  has expended a great deal of money.  However,   although Plaintiff's POM

14  word mark may be valid and protectable as a suggestive mark, the evidence

15  does not overcome the presumptively weak protection afforded the use of the

16  term "POM" alone (in contrast the stronger POM-heart design mark).

17         Plaintiff has not made a strong showing that its POM word mark is

18  entitled to protection so broad that its use should be enjoined in connection

19  with products in separate classes of goods.  Plaintiff has not demonstrated

20  that its "investment" in this suggestive word mark is sufficiently strong to

21  merit enjoining Defendant's use of its POMElla mark to market

22  pomegranate-based dietary supplements.  In addition, Defendant is correct

23  that the "POM" word mark may, in fact, be weakened by the success Plaintiff

24  has had in popularizing the term in the rapidly developing market for

25  pomegranate-based and -related consumer goods.  *See Entrepreneur Media,*

26  *Inc. v. Smith*,  279 F.3d 1135, 1144 (9th Cir. 2002) (. . . that the marketplace is

27

28                                              13

1   replete with products using a particular trademarked word indicates not only

2   the difficulty in avoiding its use but also, and directly, the likelihood that

3   consumers will not be confused by its use").

4        Accordingly, the dispositive issue is the scope of the protection to

5   which Plaintiff's POM word and heart-design marks are entitled, and this

6   determination requires analysis of whether Plaintiff can show the requisite

7   likelihood of confusion between its products and Defendant's.

8        *2. Subsequent Use Likely to Cause Confusion:*

9        Plaintiff's POM word mark was registered and reflects a "first use"

10  date in April 2002. Defendant's initial trademark registration for its

11  POMElla mark reflects a first use date of March 30, 2004, which was clearly

12  subsequent to Plaintiff's first use of the suggestive POM word mark and the

13  term POM in connection with fruit juice products in class 32.

14       The "likelihood of confusion" prong of the Lanham Act test inquires

15  whether the allegedly infringing use is "likely to cause confusion or to cause

16  mistake, or to deceive as to the affiliation, connection, or association" of the

17  two products. *Walking Mountain Productions*, 353 F.3d at 806-07 (quoting 15

18  U.S.C. § 1125(a)(1)(A)) (further internal citations omitted). Courts examine

19  the facts to determine whether a "reasonably prudent consumer in the

20  marketplace is likely to be confused as to the origin of the good or service

21  bearing one of the marks." *Surfvivor Media, Inc. v. Survivor Productions*, 406

22  F.3d 625, 630 (9th Cir. 2005) (quoting *Dreamwerks Prod. Group, Inc. v. SKG

23  Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)) (internal quotation marks

24  omitted). Here, the "marketplace(s)" in which Plaintiff and Defendant offer

25  their goods for sale play a key role in the analysis.

26  /

27

28                         14

1  **a. Initial Interest Confusion:**

2  Plaintiff seeks a finding that any use of the term "POM" creates initial

3  interest confusion with Plaintiff's mark(s) and products:

4  Initial interest confusion is customer confusion that creates
   initial interest in a competitor's product. Although dispelled

5  before an actual sale occurs, initial interest confusion
   impermissibly capitalizes on the goodwill associated with a mark

6  and is therefore actionable trademark infringement.

7  *Playboy Enterprises, Inc. v. Netscape Comm. Corp.*, 354 F.3d 1020, 1024-25 (9th

8  Cir. 2004).

9  Here, Plaintiff has failed to establish any overlap of its customers

10  (consumers in the general public) and Defendant's customers (other

11  businesses that purchase POMElla to include in products, which are, in turn,

12  offered for sale to the public) that might create a setting in which an initial

13  interest confusion analysis would properly apply. However, a more detailed

14  review of the applicable "likelihood of confusion" prong is required to

15  evaluate the merits of Plaintiff's infringement claims.

16  **b. *Sleekcraft* Factors:**

17  The Ninth Circuit's eight factor test for the "likelihood of confusion"

18  prong was first articulated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th

19  Cir. 1979), *abrogated in part on other grounds by Matel, Inc. v. Walking Mountain

20  Prod.*, 353 F.3d 792 (2003)). The application of the so-called *Sleekcraft* factors

21  is flexible, permitting a case-specific weighing of the relative importance of

22  each factor. *Surfvivor*, 406 F.3d at 631 ("The test is a fluid one and the

23  plaintiff need not satisfy every factor, provided that strong showings are

24  made with respect to some of them."); *see also Brookfield Comm.*, 174 F.3d at

25  1054.

26  The factors are: (I) the strength of the mark; (ii) the similarity of the

27

28  15

marks; (iii) the proximity or relatedness of the goods or services; (iv) the
defendant's intent in selecting its mark; (v) evidence of actual confusion; (vi)
the marketing channels used; (vii) the likelihood of expansion into other
markets; and (viii) the degree of care purchasers are likely to use. *Sleekcraft*,
599 F.2d at 348-49.

Here, the Court will consider each factor and determine whether the
record permits a finding of a likelihood of success on the merits, or serious
questions as to the merits, of the likelihood of confusion prong.

The strength of the plaintiff's mark is evaluated to determine the
strength of the scope of the trademark protection it should be afforded.
*Surfvivor*, 406 F.3d 631. Here, as discussed above, Plaintiff has demonstrated
a likelihood of success in establishing that its POM word mark is properly
classified as a suggestive mark entitled to some protection because the
exercise of some imagination is required to associate "POM" with Plaintiff's
pomegranate juice products. Additionally, the POM heart-design mark is
distinctive and entitled to protection from infringement. This factor weighs
in Plaintiff's favor.

The similarities between the parties' marks is properly examined in
the broader context of the products as a whole. *Entrepreneur Media*, 279 F.3d
at 1144. Similarities in the appearance, sound, and meaning of the marks at
issue indicate a greater likelihood of confusion. *Id.* at 1144. The vast
majority of Plaintiff's evidence demonstrating its use of the POM family of
marks indicates that Plaintiff rarely uses the "POM" word mark in
insolation. Rather, its packaging and advertising predominately uses the
"POM Wonderful" design mark, which includes a two-word phrase and the
substitution of a heart for the letter "O" in "POM." In contrast, Defendant's

1   POMElla word mark is a single word. While the font emphasizes the

2   "POM" element of the coined word, Plaintiff has not demonstrated a

3   likelihood of success in prevailing on its theory that the sole reasonable

4   explanation for this is that Defendant is attempting to cash in on the good

5   will Plaintiff has developed in "POM." For example, it is equally reasonable

6   to view Defendant's decision to set off the "POM" element as an effort to

7   indicate that the coined word comprises two concepts or aspects of the

8   product: pomegranate and ellagic.

9       However, Defendant's use of the heart symbol in the lower portion of

10  the "E" in "Ella" presents a different issue. Defendant's assertion that the

11  symbol depicts the cross section view of a pomegranate is not persuasive.

12  Defendant has introduced no evidence that either the general public or the

13  companies that purchase Defendant's products recognize the symbol as the

14  cross-section of a pomegranate. Even if it Defendant intended for the

15  symbol to represent the pomegranate fruit, the reality is that it resembles the

16  widely-recognized depiction of a heart. Accordingly, the Court finds that the

17  similarity of the marks weighs in Plaintiff's favor with respect to the use of

18  the heart symbol in conjunction with the term "POM."

19      The relatedness of the parties' goods examines whether customers are

20  "likely to associate" the two product lines. *Id.* at 633 (citing *Dreamwerks*, 142

21  F.3d at 1131). "Related goods are generally more likely than unrelated goods

22  to confuse the public as to the producers of the goods." *Brookfield Comm.*,

23  174 F.3d at 1055. Here, Plaintiff's pomegranate juices and Defendant's

24  pomegranate dietary supplements are similar in that they both derive from

25  pomegranates and are ultimately marketed to customers as healthful choices.

26  However, because the parties market their products, Plaintiff's juice

27

28                              17

1   beverages and Defendant's dietary supplements, to separate and distinct

2   customer bases, there is little evidence of a likelihood that their respective

3   customers will "associate" the two product lines. Additionally, this factor

4   weighs somewhat in Defendant's favor because Defendant targets product

5   manufacturers and producers, and Plaintiff has not shown that the

6   similarities between their pomegranate-based goods are likely to confuse the

7   public as to the origin or sponsorship of either party's goods.

8        With respect to Defendant's intent in adopting and using the POMElla

9   mark, Plaintiff's primary line of argument is that there can be no reasonable

10  explanation for Defendant's inclusion of "POM" in their mark other than

11  the fact that Defendant intended to cash in on the good will Plaintiff has

12  created in the "POM" word mark. However, the Court is not persuaded that

13  the record reflects this. Rather, this is one possible characterization of

14  Defendant's choice to include some reference to pomegranate in its

15  pomegranate-based products. Another reasonable characterization of the

16  decision is that Defendant's product is made from pomegranates, and the

17  first syllable of that word is "pom." This factor does not favor either party

18  with respect to the use of the term POM.

19       An analysis of the actual confusion factor considers whether

20  merchants, actual consumers, and members of the general (non-purchasing)

21  public have been confused by the allegedly infringing use of the mark.

22  *Americana Trad. Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1289 (9th Cir. 1992).

23  Here, the record does not reflect evidence of actual confusion by consumers

24  in connection with Defendant's use of the POMElla mark. Similarly, there

25  is no indication that Defendant's customers in particular–the manufacturers

26  and producers of consumer products–confuse the POMElla mark with

27

28                                      18

Plaintiff's "POM" mark or other marks in Plaintiff's family of marks.  By the same token, Defendant's have introduced no evidence of a lack of actual confusion.  However, Plaintiff has the burden of establishing a likelihood of success.  Accordingly, this factor does not weigh in Plaintiff's favor.

In *Sleekcraft*, the court examined the locations where the parties' good were marketed, the sales methods the parties employed, the price ranges for the products, and the methods of advertising. *Sleekcraft*, 599 F.2d at 353.  As for the parties' marketing and distribution of their goods, both parties maintain websites on which they display their products and respective marks.[9]  However, the evidence does not favor a finding that Plaintiff's marketing and sale of its juice beverages to consumers through grocery stores and Defendant's marketing of its dietary supplement products to manufacturers overlap so as to create a likelihood of confusion in their shared or overlapping customer bases.  This factor weighs in Defendant's favor.

The likelihood that either party may expand its business to directly compete with the other favors a finding of a likelihood of confusion. *Id.* at 354.  Here, Plaintiff is concerned about the fact that Defendant sells its product to one or more customers that, in turn, includes Defendant's dietary

---

[9]At Oral Argument, Plaintiff argued that *Brookfield* stands for the proposition that any "overlap" in internet marketing is highly suspect.  Plaintiff is correct that *Brookfield* recognized the importance of overlapping marketing efforts in internet commerce, but the Ninth Circuit was evaluating the overlap of internet marketing channels between parties that both marketed directly to consumers over the internet. *Brookfield Comm.*, 174 F.3d at 1057 ("Both companies, apparently recognizing the rapidly growing importance of Web commerce, are maneuvering to attract customers via the Web.  Not only do they compete for the patronage of an overlapping audience on the Web, both 'MovieBuff' and 'moviebuff.com' are utilized in conjunction with Web-based products.")  Thus, the use of websites to promote the parties products does not, alone, support a finding of overlapping marketing channels in this case.

1   supplement in other products that are sold to the general public and compete

2   with Plaintiff's juices.  The products created and marketed by Defendant's

3   customers are arguably related to Plaintiff's juice drink product line, but

4   Plaintiff has not established that Defendant is expanding into the fruit juice

5   market.[10]  More importantly, Plaintiff has not established that Defendant has

6   plans to develop or market any beverages, and Plaintiff conceded this point

7   at Oral Argument.  The record does not indicate that Plaintiff and

8   Defendant are in anything approaching direct competition.  Therefore, this

9   factor does not favor either party.

10        The analysis of the degree of care consumers exercise with respect to

11   the parties' goods looks to whether a "reasonably prudent consumer" would

12   be able to distinguish between the parties' products.  *Brookfield Comm.*, 174

13   F.3d at 1060 (also noting that the reasonably prudent consumer is

14   "expect[ed] to be more discerning–and less easily confused–when [ ]

15

16   _____

17   [10]Plaintiff notes in passing its concern that Defendant's customers are using the
     POMElla mark "presumably pursuant to a license from [Defendant]," which permits those

18   customers to use the POMElla mark on juice products and other beverage products that
     compete more directly with Plaintiff's products in the consumer marketplace. (Pl's Memo

19   of P. & A. in Support of Mot. 9:5-8).  However, Plaintiff has not advanced evidence or legal
     argument that would create liability for Defendant for the actions of its customers.

20        At Oral Argument, Plaintiff's counsel argued for the first time for issuance of the

21   requested Preliminary Injunction on a theory of contributory infringement and cited two
     cases in support of this theory.  However, contributory trademark infringement "occurs

22   when the defendant either [a] intentionally induces a third party to infringe the plaintiff's
     mark or [b] supplies a product to a third party with actual or constructive knowledge that

23   the product is being used to infringe the service mark. *Lockheed Martin Corp. v. Network
     Solutions, Inc.*, 194 F.3d 980, 983-84 (9th Cir. 1999) (citing *Inwood Lab., Inc. v. Ives Lab.,*

24   *Inc.*, 456 U.S. 844, 853-54, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).  Plaintiff did not present

25   evidence sufficient to support the issuance of a preliminary injunction on a theory of
     contributory infringement under either of the alternatives set forth in the *Inwood*

26   *Laboratories* test.

27

28                                          20

1  purchasing expensive items." A reasonably prudent consumer would likely

2  engage in some contemplation of the purchase of Plaintiff's juice products.

3  However, here again, it is significant that Plaintiff and Defendant are

4  marketing to different customer bases. Plaintiff's customers are members of

5  the general public and direct purchasers of Plaintiff's end product.

6  Defendant's customers are the companies that purchase the POMElla dietary

7  supplement to include in products the companies will produce and market to

8  consumers. Given the importance of understanding the origin and quality of

9  the products those companies will include in products they will ultimately

10  market, at least in part, on the basis of their health benefits, these *companies*

11  are likely to exercise a great deal of care in purchasing the pomegranate-

12  based dietary supplement.

13        Therefore, a weighing of the *Sleekcraft* factors does not favor a finding

14  that Plaintiff has made a sufficiently strong showing of a likelihood of

15  confusion resulting from Defendant's use of its POMElla mark. The parties'

16  respective product lines are marketed to separate customer bases, and the

17  Court does not find that Plaintiff has established a likelihood that either

18  party's use of its respective mark(s) would interfere with the other company's

19  marketing or sale of its products or would result in confusion regarding the

20  origin or sponsorship of their respective products.

21  **B. Irreparable Harm, Balancing of Hardships, Public Interest**

22        Where a plaintiff can establish a likelihood of confusion in connection

23  with a trademark infringement claim, irreparable injury is ordinarily

24  presumed. *Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir.

25

26

27

28                                    21

1   1987).  Here, irreparable harm is not presumed,[11] and Plaintiff has not

2   sufficiently demonstrated irreparable harm

3          Additionally, the balance of hardships counsels against the grant of a

4   preliminary injunction on the basis of trademark infringement.  The

5   evidence is not sufficient to support a showing a bad faith by Defendant, and

6   Plaintiff's speculations about the potential harm Defendant's marketing and

7   sale to end-product manufacturers will work on Plaintiff's marketing efforts

8   to the general public is not supported by the evidence at this point in this

9   litigation.

10          Finally, the public interest counsels against the grant of preliminary

11   injunction here because there is no discernable showing that Defendant's use

12   of POMElla mark for its dietary supplements poses any potential harm to

13   consumers or the general public.

14   /

15   /

16   /

17   /

18   /

19   /

20

21          [11]However, Defendant is correct that, even if Plaintiff had made a sufficiently strong

22   showing on the merits, the presumption of irreparable harm may be undercut where the
     moving party unduly delayed seeking a preliminary injunction.  Despite the reality of this

23   legal truth, Defendant would not prevail in its argument that Plaintiff's purported delay in

24   seeking injunctive relief undercuts that showing because Plaintiff's filing of the instant
     Motion approximately six months after initiating this lawsuit does not constitute an undue

25   delay under the circumstance.  Plaintiff filed suit upon learning of the conduct Plaintiff
     believed to be infringing, and it filed its Motion for Preliminary Injunction after

26   announcements regarding Defendant's development and marketing of its Pomella TG

27   dietary supplement in tea and other beverages.

28                                          22

## V.  CONCLUSION

Plaintiff has not established a likelihood of success on, or serious questions going to, the merits or irreparable injury such that a balance of the hardships tips sharply in its favor.  Therefore, Plaintiff's Motion for a Preliminary Injunction is DENIED.


January 31, 2006

FLORENCE-MARIE COOPER, Judge
UNITED STATES DISTRICT COURT

23